## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| PUBLIC EMPLOYEES FOR ENVIRONMENTAL RESPONSIBILITY, ET AL. | ) ) ) ) | Civil Action No. 19-3629 - RC |
| **Plaintiffs** | ) ) | **MOTION FOR TEMPORARY PARTIAL STAY OF** |
| **v.** | ) ) | **LITIGATION PENDING COMPLETION OF** |
| NATIONAL PARK SERVICE; U.S. DEPARTMENT OF THE INTERIOR; DANIEL SMITH, in his official capacity; DAVID VELA, in his official capacity; and DAVID BERNHARDT, in his official capacity. | ) ) ) ) ) ) | **RULEMAKING, WITH MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT** |
| **Defendants** | ) ) ) ) | |

Defendants the National Park Service, the United States Department of the Interior, P. Daniel Smith, in his official capacity, David Vela, in his official capacity, and David Bernhardt, in his official capacity (collectively, "Defendants") respectfully move this Court, pursuant to Federal Rule of Civil Procedure 7(b) and Local Rule 7, for an Order temporarily and partially staying this litigation filed by Plaintiffs Public Employees for Environmental Responsibility, Wilderness Watch, Environmental Action Committee of West Marin, Marin Conservation League, Save Our Seashore, Amy Meyer, Phyllis Koenig, and David Perel (collectively, "Plaintiffs"), to avoid unnecessary litigation by allowing NPS to complete the pending rulemaking process for a regulation governing electric bicycles ("e-bikes") in national parks. Specifically, Defendants request a stay which will automatically expire on October 15 if not earlier, when Defendants file a notice that the final rule has been published.

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................. 1

CERTIFICATION OF MEET AND CONFER .......................................................................... 2

BACKGROUND ................................................................................................................... 2

    A.    Regulation of E-Bikes in the National Park System ............................................... 2

          i.    The Policy ..................................................................................... 3

          ii.    The Proposed Rule ......................................................................... 4

    B.    Plaintiffs' litigation ................................................................................. 5

STANDARD FOR GRANTING A MOTION TO STAY ........................................................... 7

ARGUMENT ....................................................................................................................... 8

    I.    PLAINTIFFS' CLAIMS ARE PRUDENTIALLY MOOT AND WILL
        SOON BE CONSTITUTIONALLY MOOT ............................................................. 8

    II.    CONSIDERATIONS OF JUDICIAL ECONOMY WEIGH HEAVILY IN
        FAVOR OF GRANTING A TEMPORARY STAY PENDING
        COMPLETION OF THE RULEMAKING PROCESS ........................................... 12

    III.    THE BALANCE OF HARDSHIP TO THE PARTIES WEIGHS IN
        FAVOR OF A STAY ........................................................................................ 13

        A.    Hardship to Plaintiffs ................................................................. 13

        B.    Hardship to Defendants .............................................................. 16

CONCLUSION ................................................................................................................... 17

# TABLE OF AUTHORITIES

**Cases**

*A. L. Mechling Barge Lines, Inc. v. United States*,
  368 U.S. 324 (1961)................................................................................................ 10

*Adler v. Duval Cty. Sch. Bd.*,
  112 F.3d 1475 (11th Cir. 1997) ............................................................................. 9

*Al–Anazi v. Bush*,
  370 F. Supp. 2d 188 (D.D.C. 2005)....................................................................... 12

*Arizonans for Official English v. Arizona*,
  520 U.S. 43 (1997).................................................................................................. 1

*Beethoven.com LLC v. Librarian of Cong.*,
  394 F.3d 939 (D.C. Cir. 2005) ............................................................................... 9

*Belize Soc. Dev. Ltd. v. Gov't of Belize*,
  668 F.3d 724 (D.C. Cir. 2012)................................................................................ 7

*Bldg. & Constr. Dep't v. Rockwell Int'l Corp.*,
  7 F.3d 1487 (10th Cir. 1993) ................................................................................. 10

* *Chamber of Commerce v. Dep't of Energy*,
  627 F.2d 289 (D.C. Cir.1980).................................................................... 8, 9, 10, 12

*Chrysler Corp. v. Brown*,
  441 U.S. 281 (1979)................................................................................................ 9

*Citizens to Preserve Overton Park, Inc. v. Volpe*,
  401 U.S. 402 (1971)................................................................................................ 14

*City of New York v. Baker*,
  878 F.2d 507 (D.C. Cir. 1989)...................................................................... 8, 9, 10

*Cmty. For Creative Non-Violence v. Hess*,
  745 F.2d 697 (D.C. Cir. 1984)................................................................................ 10

*Ctr. for Marine Conservation v. Brown*,
  917 F. Supp. 1128 (S.D. Tex. 1996) ...................................................................... 11

* *Doe v. Sipper*,
  869 F. Supp. 2d 113 (D.D.C. 2012)........................................................................ 12

*Douglas v. Donovan*,
  704 F.2d 1276 (D.C. Cir. 1983).............................................................................. 1

*Estate of Gaither ex rel. Gaither v. Dist. Of Columbia*,
  No. Civ.A. 03-1458CKK, 2005 WL 3272130 (D.D.C Dec. 2, 2005) .................... 12

*Fla. Ass'n of Rehab. Facilities v. Fla. Dep't of Health & Rehabilitative Servs.*,
  225 F.3d 1208 (11th Cir. 2000) ............................................................................. 9

*Fletcher v. United States,*
    116 F.3d 1315 (10th Cir. 1997) ................................................................. 10

*Fund for Animals, Inc. v. U.S. Bureau of Land Mgmt.,*
    460 F.3d 13 (D.C. Cir. 2006) .................................................................... 9

*Garcia v. Acosta,*
    393 F. Supp. 3d 93 (D.D.C. 2019) ........................................................... 8

*Hisler v. Gallaudet Univ.,*
    344 F. Supp. 2d 29 (D.D.C. 2004) ........................................................... 8

*Honig v. Doe,*
    484 U.S. 305 (1988) ................................................................................... 9

\* *Khadr v. Bush,*
    587 F. Supp. 2d 225 (D.D.C. 2008) ......................................................... 12

\* *Landis v. N. Am. Co.,*
    299 U.S. 248 (1936) ......................................................................... 7, 8, 13

*Lockyer v. Mirant Corp.,*
    398 F.3d 1098 (9th Cir. 2005) ................................................................. 7

*Los Alamos Study Grp. v. U.S. Dep't of Energy,*
    794 F. Supp. 2d 1216 (D.N.M. 2011) ...................................................... 11

*Mills v. Green,*
    159 U.S. 651 (1895) ................................................................................... 9

*Mine Reclamation Corp. v. FERC,*
    30 F.3d 1519 (D.C. Cir. 1994) ................................................................. 9

*Nat'l Indus. for Blind v. Dep't of Veterans Affairs,*
    296 F. Supp. 3d 131 (D.D.C. 2017) ......................................................... 7

*Or. Nat. Res. Council v. Keys,*
    No. Civ. 02- 3080-CO, 2004 WL 1048168 (D. Or. May 7, 2004) ........... 11

*Penthouse Int'l, Ltd. v. Meese,*
    939 F.2d 1011 (D.C. Cir. 1991) ............................................................... 10

*Reeve Aleutian Airways, Inc. v. United States,*
    889 F.2d 1139 (D.C. Cir. 1989) ............................................................... 10

*Rohr Indus., Inc. v. Washington Metro. Area Transit Auth.,*
    720 F.2d 1319 (D.C. Cir. 1983) ............................................................... 8

*S. Utah Wilderness All. v. Smith,*
    110 F.3d 724 (10th Cir. 1997) ................................................................. 10

*Soliman v. United States,*
    296 F.3d 1237 (11th Cir. 2002) ............................................................... 9

*United States v. Chem. Found.*,
  272 U.S. 1 (1926) ........................................................................................... 15

*Willow Creek Ecology v. U.S. Forest Serv.*,
  225 F. Supp. 2d 1312 (D. Utah 2002) .............................................................. 11

*Worth v. Jackson*,
  451 F.3d 854 (D.C. Cir. 2006) ........................................................................... 9

**Regulations**

36 C.F.R. § 1.5(a)(4) ............................................................................................ 14

85 Fed. Reg. 19,418 (Apr. 7, 2020) ................................................................. 5, 17

85 Fed. Reg. 19,711 (Apr. 8, 2020) ............................................................. 1, 5, 17

85 Fed. Reg. 19,712 (Apr. 8, 2020) .................................................................... 5

85 Fed. Reg. 20,229 (Apr. 10, 2020) ............................................................ 5, 17

85 Fed. Reg. 20,463 (Apr. 13, 2020) ............................................................ 5, 17

**Other Authorities**

https://www.nps.gov/acad/planyourvisit/bicycling.htm (last visited June 8, 2020) .................... 16

https://www.nps.gov/acad/planyourvisit/conditions.htm (last visited June 8, 2020) ................. 16

Superintendent's Compendium of Designations, Closures, Permit Requirements, and Other
  Restrictions Imposed Under Discretionary Authority;
  https://www.nps.gov/pore/learn/management/lawsandpolicies_superintendents_compendium.h
  tm (last visited June 8, 2020) ......................................................................... 15

## INTRODUCTION

Counsel have a duty to inform the court of events that may moot the case. *Arizonans for Official English v. Arizona,* 520 U.S. 43, 68 n.23 (1997). This is especially true for government attorneys. *Douglas v. Donovan,* 704 F.2d 1276, 1279-80 (D.C. Cir. 1983).

Plaintiffs filed this case in December 2019, challenging NPS Policy Memorandum 19-01 ("Policy") concerning e-bikes. They seek declaratory and injunctive relief to prohibit Defendants from allowing e-bikes in the National Park System without first completing a rule-making and complying with NEPA. ECF 1 ⁋ 1. Defendants answered in March, 2020, noting that the National Park Service ("NPS") had begun a rulemaking process regarding e-bikes. Answer to Compl. ¶ 40, ECF No. 7. NPS published a Notice of Rulemaking in the Federal Register on April 8, proposing regulations governing the use of e-bikes within the National Park System ("Proposed Rule"). *See* General Provisions; Electric Bicycles, 85 Fed. Reg. 19,711 (Apr. 8, 2020) (to be codified at 36 C.F.R. pts. 1 and 4). The comment period closed three days ago, and the NPS is working towards a goal of issuing the final rule by early September, well before the merits of this case are likely to be decided.  *See* Ex. 1 (Calhoun Decl.) at 4. The initiation of this rulemaking process in April 2020 has rendered Plaintiffs' claims prudentially moot and its completion will soon render Plaintiffs' claims constitutionally moot. The final rule will supersede the Policy and there will longer be an actual "case or controversy" concerning the claims, which is a jurisdictional prerequisite to the Court's jurisdiction under Article III of the Constitution. These circumstances call for exercise of the Court's broad discretion to temporarily stay briefing and consideration of the merits of Plaintiffs' claims to prevent unnecessary litigation. A temporary short-term stay of the briefing and consideration of the merits is in the interest of judicial economy and will not prejudice Plaintiffs.

## CERTIFICATION OF MEET AND CONFER

In accordance with Local Civil Rule 7(m), counsel for the parties have conferred on this motion and made a good faith effort to narrow the areas of disagreement. The motion is opposed.

///

## BACKGROUND

**A.      Regulation of E-Bikes in the National Park System:**

On August 29, 2019, the Secretary of the Interior issued Secretarial Order 3376 in order to address the regulatory uncertainty regarding the treatment of bicycles that include a "small electric motor that can provide an electric power assist to the operation of the bicycle" – i.e., e-bikes – on lands managed by the U.S. Department of the Interior. S.O. 3376. *See* Ex. 2 at 1. In particular, the Secretary noted that there was uncertainty as to whether e-bikes "should be treated in the same manner as other types of bicycles or, alternatively, considered to be motor vehicles." *Id.* The Secretary further explained that "[u]ncertainty about the regulatory status of e-bikes has led the Federal land management agencies to impose restrictive access policies treating e-bikes as motor vehicles, often inconsistent with State and local regulations for adjacent areas." *Id.*

Secretarial Order 3376 identified three classes of e-bikes: (1) e-bikes that provide motorized assistance only when the rider is pedaling and that cease to provide such assistance when the bicycle reaches 20 mph (Class 1); (2) e-bikes with a motor that may be used exclusively to propel the bicycle, but that are not capable of providing such assistance when the bicycle reaches 20 mph (Class 2); and, (3) e-bikes that provide motorized assistance only when the rider is pedaling and that cease to provide assistance when the bicycle reaches 28 mph (Class 3). *Id.* The Secretarial Order sets a policy that the three classes of e-bikes "shall be allowed

where other types of bicycles are allowed" and that they "shall not be allowed where other types of bicycles are prohibited." *Id.* at Sec. 4(a)(iii)(b), (a)(iii)(c).

Relevant here, the Order directed the Assistant Secretary of Fish, Wildlife and Parks to both (1) instruct NPS to adopt a Service-wide policy in conformance with the Order, "[t]o the extent existing regulations allow," and (2) "develop a proposed rule to revise 36 C.F.R. § 1.4 and any associated regulations to be consistent with this Order, add a definition for e-bikes consistent with 15 U.S.C. § 2085, and expressly exempt all e-bikes as defined in Sec. 4a from the definition of motor vehicles . . . ." *Id.* at Sec. 5(a)(i), (a)(iv). The Secretarial Order further directed the other three public land management bureaus within the Department of the Interior (the Bureau of Land Management, Bureau of Reclamation, and the U.S. Fish & Wildlife Service) to promulgate regulations addressing e-bikes. *Id.* at Sec. 5(a)(5), (a)(vi), (a)(iii).

As directed by S.O. 3376, NPS issued a "Service-wide policy" on e-bikes (*id.* at Sec. 5(a)(i)), which is the subject of this lawsuit, and also published a Proposed Rule on e-bikes in April 2020. The publication of the final rule will soon make this suit constitutionally moot.

### i.      The Policy:

In accordance with Secretarial Order 3376, NPS Deputy Director Daniel P. Smith, exercising the authority of the Director of the NPS, issued the Policy regarding e-bikes on NPS lands on August 30, 2019.  Ex. 3 ("Policy"). The Policy states that "[e]-bikes are allowed where traditional bicycles are allowed[,]" but "are not allowed where traditional bicycles are prohibited, including wilderness areas." *Id.* at 2. The stated intent of the Policy is "to allow e-bikes to be used for transportation and recreation in a similar manner to traditional bicycles," and to apply provisions that regulate traditional bicycles to e-bikes. *Id.* at 3. The Policy mandates that on trails

where use of motor vehicles is not allowed, "operators may only use the power provided by the electric motor to assist pedal propulsion of an e-bike." *Id.*

The Policy does not itself permit e-bikes in any NPS-managed unit; rather, it directs park superintendents to "manage e-bikes consistent with this Memorandum under the authority in 36 CFR 1.5(a)(2)[,]" which "allows superintendents to designate areas for a specific use or activity, or impose conditions or restrictions on a use or activity." *Id.* at 4. It further requires superintendents to publish notice of their management action with respect to e-bikes, including inserting language in the superintendent's compendium for their park, and to comply with all applicable laws implicated by the compendium action, including the National Environmental Policy Act of 1969 ("NEPA"). *Id.*

Important to this case, the Policy expressly notes that superintendents retain the authority to "limit or restrict or impose conditions on bicycle use, *including specific limitations on e-bike use, or may close any park road, parking area, administrative road, trail, or portion thereof to such bicycle use and/or e-bike use . . .*" *Id.* at 3 (emphasis added). It authorizes superintendents to limit or restrict or impose conditions on e-bike use for public health and safety, natural and cultural resource protection, and other management activities and objectives, provided the public is notified through one or more methods listed in 36 C.F.R. § 1.7. *Id.* Each park is different, each trail is different, and each park Superintendent makes the decisions about what is allowed in her particular park, using their authority at 36 C.F.R. §1.5. *Id.* at 4. Park restrictions and closures are listed in the superintendent's compendium (or written compilation) of discretionary actions for that park, which is referenced in 36 C.F.R. § 1.7(b).

      ii.      **<u>The Proposed Rule</u>:**

As directed by Secretarial Order 3376, the NPS published the Proposed Rule in the Federal Register on April 8, proposing regulations governing the use of e-bikes within the National Park System. *See* General Provisions, Electric Bicycles, 85 Fed. Reg. 19,711. The three other public land management bureaus within the Department of the Interior (the Bureau of Land Management, Bureau of Reclamation, and the U.S. Fish & Wildlife Service) also published proposed regulations regarding e-bikes pursuant to Secretarial Order 3376 in early April. *See* National Wildlife Refuge System; Use of Electric Bicycles, 85 Fed. Reg. 19,418 (Apr. 7, 2020) (to be codified 50 C.F.R. pt. 27); Increasing Recreational Opportunities Through the Use of Electric Bikes, 85 Fed. Reg. 20,229 (Apr. 10, 2020) (to be codified 43 C.F.R. pt. 8340); Off Road Vehicle Use, 85 Fed. Reg. 20,463 (Apr. 13, 2020) (to be codified 43 C.F.R. pt. 420). The NPS Proposed Rule includes a definition for the term "electric bicycle" which would retain the concept of three classes of e-bikes discussed above, and would establish proposed rules for how electric bicycles may be used on NPS-managed lands. General Provisions; Electric Bicycles, 85 Fed. Reg. 19,711. Similar to the approach in the Policy, the proposed regulation would authorize park superintendents to allow e-bikes wherever traditional bicycles are allowed and to limit or restrict or impose conditions on e-bike use. *Id.* Public comments on the Proposed Rule were due by June 8, 2020. *Id.* at 19,712. NPS intends and expects to publish the final Proposed Rule by September 4, 2020. Calhoun Decl. at ⁋ 4. Once finalized, the Proposed Rule will replace and supersede the Policy.

**B.    Plaintiffs' litigation:**

Plaintiffs filed their complaint on December 5, 2019 (though it was not served on the U.S. Attorney's Office in accordance with Federal Rule of Civil Procedure 4(i) until January 22, 2020), seeking declaratory and injunctive relief to prohibit Defendants from allowing e-bikes in

the National Park System without first completing a rule-making and complying with NEPA. Compl. ⁋ 1, ECF No. 1. Plaintiffs specifically bring five claims, challenging the Policy as violating current NPS regulations, NEPA, the Federal Vacancies Reform Act, the National Park Service Organic Act, and the Federal Advisory Committee Act.  All five claims are directed squarely at the Policy.

Defendants filed and served the administrative record on June 1, 2020. Index to Admin. R., ECF No. 9-1. Although the rulemaking was already underway, Defendants chose to file the Record before filing this motion, in recognition that the Plaintiffs have an interest in having the Record during a stay. Similarly, Defendants do not request a stay before any motions concerning the record are resolved; Defendants request a stay before motions for summary judgment may be filed.

Any motions other than summary judgment motions shall be filed within 10 days of the date of the Record's filing.  *See* Minute Order dated 3/31/20, ECF No. 8. The present motion for a stay is timely under this order. Under the local rules, Plaintiffs' response is due June 25, and Defendants' reply is due July 2. In addition, Defendants anticipate that Plaintiffs may file a motion to supplement the record, which motion would proceed on same briefing schedule as the motion for stay.

Following the issuance of order(s) resolving the motion to stay and Plaintiffs' anticipated motion to supplement the record, Plaintiffs' motion for summary judgment shall be due in 30 days, with Defendants' response and cross-motion due 30 days later, Plaintiffs' response and reply 30 days thereafter, and Defendants' reply 15 days later. *Id.* Conversely, summary judgment briefing would be stayed if the Court grants the present motion.

Accordingly, if the Court denies the present motion for stay, summary judgment briefing and argument would not likely be concluded until mid-October at the earliest, depending upon when the Court rules on this motion to stay and the anticipated motion to supplement. However, the final rule is expected by early September and will moot all five of Plaintiffs' claims because the final rule will replace and supersede the Policy and there will then no longer be any justiciable case or controversy between the parties as to its legality.

## STANDARD FOR GRANTING A MOTION TO STAY

Federal district courts have broad discretion to stay litigation. *Landis v. N. Am. Co.,* 299 U.S. 248, 254 (1936)). This power is incident to the court's power to control its own docket. *Id.* (holding that an indefinite stay to wait for another court's decision was immoderate, but remanding to this court to decide in its discretion whether a shorter stay would be moderate). In determining whether a stay is appropriate, courts must consider "the possible damage which may result from the granting of a stay, the hardship or inequity which a party may suffer in being required to go forward, and the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." *Lockyer v. Mirant Corp.,* 398 F.3d 1098, 1110 (9th Cir. 2005) (citation omitted); *Belize Soc. Dev. Ltd. v. Gov't of Belize,* 668 F.3d 724, 731-33 (D.C. Cir. 2012) (reversing an indefinite stay). In exercising this judgment, courts must "'weigh competing interests and maintain an even balance' between the court's interests in judicial economy and any possible hardship to the parties." *Belize*, 668 F.3d at 732–33 (D.C. Cir. 2012) (quoting *Landis,* 299 U.S. at 254–55, 59); *Nat'l Indus. for Blind v. Dep't of Veterans Affairs,* 296 F. Supp. 3d 131, 137 (D.D.C. 2017) ("[H]ardship to the parties and benefits to judicial economy are the key interests to consider in evaluating a motion for a stay." (citation omitted)).

In addition, "[a] trial court may, with propriety, find it is efficient for its own docket and the fairest course for the parties to enter a stay of an action before it, pending resolution of independent proceedings which bear upon the case."" *Hisler v. Gallaudet Univ.,* 344 F. Supp. 2d 29, 35 (D.D.C. 2004) (citation omitted); *Garcia v. Acosta,* 393 F. Supp. 3d 93, 110 (D.D.C. 2019); *Rohr Indus., Inc. v. Washington Metro. Area Transit Auth.,* 720 F.2d 1319, 1325 (D.C. Cir. 1983) ("Courts are certainly empowered to delay action where there is a likelihood that a related, though not identically overlapping, agency action may produce results that will render the complex fact pattern simple, or the lengthy proceeding short." (citation omitted)). When considering a motion for stay, courts should "guard against depriving the processes of justice of their suppleness of adaptation to varying conditions[,]" while also keeping any stay "within the bounds of moderation." *Landis,* 299 U.S. at 256.

## ARGUMENT

## I.   PLAINTIFFS' CLAIMS ARE PRUDENTIALLY MOOT AND WILL SOON BE CONSTITUTIONALLY MOOT.

Plaintiffs here challenge the Policy and contend that a rulemaking is necessary in order for the NPS to permit e-bikes on trails in units within the National Park System. Defendants disagree with Plaintiffs' arguments and believe that the policy direction in the Policy lies within the NPS's authority. However, because the NPS is diligently pursuing a rulemaking process that, when completed, will supersede the Policy and moot Plaintiffs' claims, this pending rulemaking renders Plaintiffs' claims prudentially moot.

As the D.C. Circuit has previously recognized, "the doctrine of mootness has 'two distinct branches.'" *City of New York v. Baker,* 878 F.2d 507, 509 (D.C. Cir. 1989) (quoting *Chamber of Commerce v. Dep't of Energy,* 627 F.2d 289, 291 (D.C. Cir.1980)). The first branch is rooted in the "jurisdictional limitations dictated by the Constitution." *Baker,* 878 F.2d at 509. "By constitutional design, a federal court is authorized only to adjudicate

'actual, ongoing controversies.'" *Beethoven.com LLC v. Librarian of Cong.,* 394 F.3d 939, 950 (D.C. Cir. 2005), as amended (Feb. 4, 2005) (quoting *Honig v. Doe,* 484 U.S. 305, 317 (1988)); *Soliman v. United States,* 296 F.3d 1237, 1242 (11th Cir. 2002) ("The doctrine of mootness derives directly from the case or controversy limitation because 'an action that is moot cannot be characterized as an active case or controversy.'") (quoting *Adler v. Duval Cty. Sch. Bd.,* 112 F.3d 1475, 1477 (11th Cir. 1997)).

The final rule will be a federal regulation that has the force of law.  *Chrysler Corp. v. Brown,* 441 U.S. 281, 282 (1979). It will cover the entire subject matter of the Policy. Thus, upon completion of the Rulemaking process already underway, the Policy will be superseded by the final regulation. All five of Plaintiffs' claims are directed squarely at the Policy. Therefore, Plaintiffs' claims be will constitutionally moot and the court will no longer have jurisdiction over them. *Worth v. Jackson,* 451 F.3d 854, 861 (D.C. Cir. 2006) ("The Constitution nowhere licenses us to rule on the legality of an agency policy that no longer exists . . ."); *Beethoven.com LLC,* 394 F.3d at 950 (Courts "may not 'give opinions upon moot questions or abstract propositions, or . . . declare principles or rules of law which cannot affect the matter in issue in the case before it.'") (quoting *Mills v. Green,* 159 U.S. 651, 653 (1895)); *Mine Reclamation Corp. v. FERC,* 30 F.3d 1519, 1522 (D.C. Cir. 1994) ("[M]ootness goes to the jurisdiction of this court." (citations omitted)); *Fla. Ass'n of Rehab. Facilities v. Fla. Dep't of Health & Rehabilitative Servs.,* 225 F.3d 1208, 1217 (11th Cir. 2000) ("[a]ny decision on the merits of a moot case or issue would be an impermissible advisory opinion" (citation omitted)); *Fund for Animals, Inc. v. U.S. Bureau of Land Mgmt.,* 460 F.3d 13, 18 (D.C. Cir. 2006) (challenge to an expired policy memorandum was moot).

The second branch of the doctrine of mootness, often referred to as "'prudential mootness,' does not concern a court's power to grant relief, but rather its exercise of discretion in the use of that power." *Baker,* 878 F.2d at 509–10 (quoting *Chamber of Commerce v. U.S. Dep't*

*of Energy,* 627 F.2d 289, 291 (D.C. Cir.1980)). It "holds that '[i]n some circumstances, a controversy, not [constitutionally] moot, is so attenuated that considerations of prudence and comity for coordinate branches of government counsel the court to stay its hand, and to withhold relief it has the power to grant.'" *Id.; Chamber of Commerce*, 627 F.2d at 291 (upholding district court's dismissal of case without need to decide whether it was technically moot); *Bldg. & Constr. Dep't v. Rockwell Int'l Corp.,* 7 F.3d 1487, 1491-92 (10th Cir. 1993); *see also, A. L. Mechling Barge Lines, Inc. v. United States,* 368 U.S. 324, 331 (1961); *Baker,* 878 F.2d at 510; *Cmty. For Creative Non-Violence v. Hess,* 745 F.2d 697, 701 (D.C. Cir. 1984); *Reeve Aleutian Airways, Inc. v. United States,* 889 F.2d 1139, 1144 (D.C. Cir. 1989). In such cases, "sound discretion withholds the remedy where it appears that a challenged 'continuing practice' is, at the moment adjudication is sought, undergoing significant modification so that its ultimate form cannot be confidently predicted." *A. L. Mechling Barge Lines, Inc. v. United States*, 368 U.S. 324, 331 (1961); *Baker*, 878 F.2d at 510.

The doctrine of prudential mootness is generally applied in cases involving requests for prospective equitable relief by declaratory judgment or injunction.  *Fletcher v. United States,* 116 F.3d 1315, 1321 (10th Cir. 1997); *Baker,* 878 F.2d at 510. It empowers a court to "decline to grant declaratory or injunctive relief where it appears that a defendant, usually the government, has already changed or is in the process of changing its policies or where it appears that any repeat of the actions in question is otherwise highly unlikely." *Bldg. & Constr. Dep't,* 7 F.3d at 1492; *Penthouse Int'l, Ltd. v. Meese,* 939 F.2d 1011, 1019–20 (D.C. Cir. 1991) (noting application of the prudential mootness doctrine stems from the court's discretion with respect to awarding equitable relief); *S. Utah Wilderness All. v. Smith,* 110 F.3d 724, 727 (10th Cir. 1997) (noting that the doctrine of prudential mootness is particularly applicable where the relief sought is an injunction against the government).

The complaint in this case begins "Plaintiffs bring this action for declaratory and injunctive relief to prohibit [Defendants from allowing e-bikes] within the National Park System without first going through the rule-making and environmental impact assessment steps that [are] required by federal law." Compl. ¶ 1, ECF No. 1. It ends with a prayer for declaratory relief regarding the various alleged statutory violations that Plaintiffs contend render the Policy "arbitrary or capricious, an abuse of discretion, and otherwise contrary to law," and a prayer for broad, nationwide, injunctive relief ordering, *inter alia,* mandatory closures to e-bikes on all non-motorized trails. Compl. 27, 29-30, ECF No. 1. The central issue before the Court, whether NPS complied with various statutes prior to issuing the Policy, is prudentially moot because the Policy itself will be superseded when NPS completes the rulemaking process and promulgates a final regulation regarding e-bikes. *Ctr. for Marine Conservation v. Brown*, 917 F. Supp. 1128, 1150 (S.D. Tex. 1996) (dismissing NEPA claim as either moot or not ripe because, assuming a NEPA violation has occurred, "the relief the Court would order is the precise action the Defendants have already undertaken[,]" preparing an EIS); *Los Alamos Study Grp. v. U.S. Dep't of Energy*, 794 F. Supp. 2d 1216, 1223-26 (finding plaintiffs' NEPA challenges prudentially moot based on agency's preparation of an SEIS); *In re Tri-State Water Rights Litig.*, No. 3:07-md-01 (PAM/JRK), 2010 U.S. Dist. LEXIS 108931, at *39-40 (M.D. Fla. July 21, 2010) (NEPA claims against prior plan were prudentially moot where agency was already preparing a new EIS for a new plan); *Or. Nat. Res. Council v. Keys*, No. Civ. 02- 3080-CO, 2004 WL 1048168, at *10 (D. Or. May 7, 2004) (dismissing claims for alleged ESA violations for allegedly inadequate implementation of an existing biological opinion on grounds of prudential mootness where consultation was expected to be reinitiated shortly), adopted by, 2004 WL 1490320, at *1 (D. Or. June 29, 2004); *Willow Creek Ecology v. U.S. Forest Serv.*, 225 F. Supp. 2d 1312, 1318-19 (D. Utah 2002) (holding that NEPA challenges to partially-completed timber harvest were

prudentially moot where any future harvest activities would be based on new NEPA analyses subject to judicial review).

Because they ask for equitable relief against a government agency, and the agency rulemaking they seek is underway and will soon moot their claims, Plaintiffs' claims are prudentially moot. "[C]onsiderations of prudence and comity for coordinate branches of government counsel the court to stay its hand." *Chamber of Commerce,* 627 F.2d at 291. Although Defendants do not at this time seek dismissal, the lesser relief of a limited stay of the litigation pending the completion of the ongoing rulemaking process is well within the Court's discretionary authority.  As discussed below, it will serve judicial economy and will not prejudice Plaintiffs.

## II.   CONSIDERATIONS OF JUDICIAL ECONOMY WEIGH HEAVILY IN FAVOR OF GRANTING A TEMPORARY STAY PENDING COMPLETION OF THE RULEMAKING PROCESS.

"[T]he [c]ourt has an interest in avoiding unnecessary litigation that would burden its docket and 'hamper judicial economy.'" *Doe v. Sipper,* 869 F. Supp. 2d 113, 117 (D.D.C. 2012) (granting 90 day stay of civil rape case to wait for resolution of related criminal case), citing *Estate of Gaither ex rel. Gaither v. Dist. Of Columbia,* No. Civ.A. 03-1458CKK, 2005 WL 3272130, at *6 (D.D.C Dec. 2, 2005) (also staying civil case until resolution of criminal case). A court may grant a motion for stay "if it finds that '[i]n the interest of judicial economy and avoiding unnecessary litigation' a stay is appropriate." *Khadr v. Bush,* 587 F. Supp. 2d 225, 229 (D.D.C. 2008) (staying detainee's challenge to the legality of detention at Guantanamo Bay pending completion of military commission proceedings), citing *Al–Anazi v. Bush,* 370 F. Supp. 2d 188, 199 (D.D.C. 2005) (stay pending resolution of appeals of similar cases).

Considerations of judicial economy weigh heavily in favor of a temporary stay of this case pending completion of the rulemaking process.  As discussed above, there is a substantial probability that NPS will complete its on-going rulemaking process before summary judgment

briefing will be completed and before the Court can determine the merits of Plaintiffs' claims. Again, NPS presently anticipates that it is likely to issue the final rule in September, whereas it is unlikely that cross-motions for summary judgment motions would even be submitted to the Court before mid-October at the earliest. In these circumstances, it makes no sense to put the Court and the parties through the burdens of considering the merits of Plaintiffs' claims, given that these claims are likely to be mooted before they can be resolved.

Even in the unlikely event that the Court were to rule on the claims before the rule is finalized, any such ruling would be short-lived and insufficient to justify the expenditure of the Court's and the parties' limited resources. In fact, the Court might have to look at the NPS's administration of e-bikes twice and in successive lawsuits. First, this Court would issue a decision on the merits of Plaintiffs' claims challenging the current Policy. Then, after the final rule is published, the Court might need to consider challenges to the newly-adopted regulation, should Plaintiffs decide to file a new lawsuit challenging its validity.

It is entirely inconsistent with principles of judicial economy for this Court or the parties to expend their limited resources in successive litigation over the validity of the Policy and then again over the validity of the final e-bikes regulation. By issuing a short stay to wait for the final rule, the Court can examine e-bike regulations only once (or not at all, if the final rule is not challenged), and the end result for Plaintiffs will be the same either way.

## III.    THE BALANCE OF HARDSHIP TO THE PARTIES WEIGHS IN FAVOR OF A STAY.

### A.    Hardship to Plaintiffs:

To prevent a stay, there must be "a fair possibility" that Plaintiffs will suffer harm if the case is stayed. *Landis,* 299 U.S. at 255.  Plaintiffs have alleged two types of injury that could theoretically be prolonged by a stay in the litigation: an alleged increased chance of collisions between people and bikes on trails, and alleged "environmental impact[s]" such as increased

noise and trail damage.[1] *See* Compl. ¶1, ECF No. 1. Any hardships to Plaintiffs resulting from a temporary stay are very attenuated and uncertain at best.

Plaintiffs' alleged harms are attenuated because the challenged Policy did not authorize or otherwise allow e-bikes within any single National Park System unit. In any park units where e-bikes are allowed, they have been authorized by subsequent decisions by individual park superintendents—decisions not challenged in this litigation. The Policy was directed at a current issue in national parks – e-bikes appearing with greater frequency and governmental confusion as to how to regulate them, especially where they are already expressly allowed under state law. Revoking the Policy will not prevent e-bikes from being introduced into parks. In the absence of System-wide policy, individual park superintendents would be free to use their discretion to regulate e-bikes as they saw fit on a park-by-park basis. In short, the Policy is not the direct cause of any safety concerns or environmental impacts.

Further, as acknowledged by the Policy, park superintendents have the authority to "impose conditions or restrictions on a use or activity" if they determine it is necessary "for the maintenance of public health and safety, protection of environmental or scenic values, protection of natural or cultural resources, aid to scientific research, implementation of management responsibilities, equitable allocation and use of facilities, or the avoidance of conflict among visitor use activities." 36 C.F.R. § 1.5(a)(4), (a); Ex. 3 at 4. The Court must presume that, in those parks where trails were opened to e-bikes, Superintendents did consider the potential for collisions and for noise and trail damage when they determined which trails to open to e-bikes. *See Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 415-16 (1971), *abrogated on other grounds by Califano v. Sanders,* 430 U.S. 99 (1977) (agency decisions are entitled to a

---

[1] The procedural injuries that Plaintiffs alleged, regarding the process and authority for the Policy, are not part of this equitable balancing because they would not be extended by a stay in the litigation.

presumption of regularity); *United States v. Chem. Found.*, 272 U.S. 1, 14–15 (1926) ("The presumption of regularity supports the official acts of public officers, and, in the absence of clear evidence to the contrary, courts presume that they have properly discharged their official duties." (citations omitted)).

Plaintiffs identify three parks as of interest to them in their Complaint: Point Reyes National Seashore; Golden Gate National Recreation Area; and, Acadia National Park. Compl. ¶¶ 12-16, ECF No. 1.  A review of the management of e-bikes in those parks demonstrates that superintendents have exercised their management authority in order to reduce any potential impacts and minimize the user conflicts that Plaintiffs fear. In Point Reyes National Seashore, only Class 1 e-bikes are permitted on specific trails and e-bikes are prohibited on one trail open to traditional bicycles. *See* Superintendent's Compendium of Designations, Closures, Permit Requirements, and Other Restrictions Imposed Under Discretionary Authority available at: https://www.nps.gov/pore/learn/management/lawsandpolicies_superintendents_compendium.htm (last visited June 8, 2020). Class 2 and 3 e-bikes are not permitted. *Id.* As of the time of filing this motion, Golden Gate National Recreation Area has not yet allowed e-bikes in the park through a compendium action, though this action is still under consideration. *See* https://www.nps.gov/goga/learn/management/lawsandpolicies.htm (last visited June 8, 2020).[2] The proposed compendium action under consideration at Golden Gate National Recreation Area establishes speed limits and group size restrictions for e-bikes and prohibits e-bikes on "narrow trails, trails with stairs, erosion prone areas, areas adjacent to steep drop offs and congested areas to protect public health and safety, soils and vegetation" as well as certain equestrian trails in

---

[2] The Northern District of Golden Gate National Recreation Area is managed jointly with Point Reyes National Seashore and subject to the compendium action for Point Reyes National Seashore. *See* https://www.nps.gov/pore/learn/management/lawsandpolicies_superintendents_compendium.htm. (last visited June 11, 2020).

order to better manage visitor use conflicts. *Id.* at Draft 2019 Superintendent's Compendium of Designations, Closures, Permit Requirements and Other Restrictions v2 – E-Bikes 15. Acadia National Park previously allowed Class 1 e-bikes where traditional bicycles were allowed through a compendium action, but reduced the speed limit for e-bikes to 20 mph on the renowned old "carriage roads."' https://www.nps.gov/acad/planyourvisit/bicycling.htm (last visited June 8, 2020); Compl. ¶16, ECF No. 1 (citing danger from e-bikes that can *exceed* 20 mph on carriage roads). As of the time of filing of this brief, the carriage roads in Acadia had reopened for pedestrian use only, pending clean up from winter storms delayed by the COVID-19 pandemic. https://www.nps.gov/acad/planyourvisit/conditions.htm (last visited June 8, 2020). Other restrictive measures related to COVID-19 will likely reduce visitation to Acadia. *See id.*

 In addition, the COVID-19 pandemic has resulted in reduced access to many parks across the country, including access by e-bike users, even where e-bikes are permitted during the pendency of Plaintiffs' lawsuit. Many reopening actions are underway, though they vary park by park. Moreover, in the event that user conflicts or environmental effects do occur within any park in which e-bikes are allowed even with initial park-specific restrictions in place, that park's superintendent retains the authority and discretion to take further action to reduce such effects, including restricting e-bike access. Finally, even in those parks where e-bikes have been permitted by the superintendent, e-bikes are only allowed where traditional bicycles are already allowed (including paved roads) and are not allowed in wilderness. Parks were required to go through rigorous environmental review before allowing traditional bicycles on each trail and therefore the kinds of trails where bikes and e-bikes are now allowed are well-suited to their use.

In sum, potential hardship to Plaintiffs that could result from a temporary stay in the litigation is too uncertain and attenuated to satisfy the "a fair possibility" of harm standard and justify expending limited resources on litigation that will inevitably be mooted.

**B.     Hardship to Defendants:**

As directed by Secretarial Order 3376, the Department of the Interior is currently engaged in an exercise of coordinated rulemaking regarding e-bikes across all four land managing agencies within the Department. Proposed regulations for all four bureaus were published in the Federal Register in early April, and the comment periods for all four regulations will close by mid-June. General Provisions; Electric Bicycles, 85 Fed. Reg. 19,711; Nat'l Wildlife Refuge System; Use of Electric Bicycles, 85 Fed. Reg. 19,418; Increasing Recreational Opportunities Through the Use of Electric Bikes, 85 Fed. Reg. 20,229; Off-Road Vehicle Use, 85 Fed. Reg. 20,463. These comments will be analyzed, considered by the agencies in reaching their final decision, and responded to in the final regulation which will be published in the Federal Register. However, the staff at the Department of Interior and NPS who are working on the NPS's regulations are also working on the response to this litigation. *See* Ex. 1 (Decl. of John Calhoun) ⁋ 2. Already, significant staff resources have been spent compiling the administrative record.  It is a hardship to conduct unnecessary litigation.  It is also a hardship for limited public resources to be expended in support of the defense of this litigation simultaneous with NPS efforts to pursue the very rulemaking that Plaintiffs seek to require the NPS to complete.

## CONCLUSION

NPS is currently engaged in the very rulemaking that Plaintiffs requested in this lawsuit. The process is moving swiftly and a final rule is expected in September. Plaintiffs' claims will soon be moot under Article III of the Constitution. Should a decision on Plaintiffs' claims be issued before they become constitutionally moot—which is unlikely due to the time necessary to finalize the intervening motions and then brief and decide the motions for summary judgment— any relief Plaintiffs receive from this lawsuit will be short-lived, because the final rule will supersede the Policy. If Plaintiffs are then dissatisfied with the final rule they will be required to

file a new lawsuit challenging it, for which a new administrative record will need to be prepared, new briefing filed, and a new merits decision rendered.

The pending rulemaking renders this litigation prudentially moot. A temporary stay of summary judgment briefing pending completion of the rulemaking is within this Court's broad discretionary power. A temporary stay is warranted because the potential for hardship to Plaintiffs is attenuated and unlikely, while the hardship of expending resources on unnecessary litigation is a burden to all. Considerations of judicial economy counsel that the Court should issue a temporary stay which will automatically expire on October 15, 2020 if not earlier when the final rule is published, as described in the attached proposed order, to allow for completion of the rulemaking process.

Respectfully submitted this 11th day of June 2020,

PRERAK SHAH
Deputy Assistant Attorney General

*/s/ Eve W. McDonald*
EVE W. MCDONALD
Trial Attorney
Natural Resources Section
Environment & Natural Resources Division
United States Department of Justice
999 18th Street, South Terrace, Suite 370
Denver, CO 80202
Ph: (303) 844-1381
evelyn.mcdonald@usdoj.gov

*Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that on June 11, 2020 I electronically filed the foregoing Joint Proposed

Briefing Schedule with the Clerk of the Court via the CM/ECF system, which will send

notification to the attorneys of record in this case.


*/s/ Eve W. McDonald*
Eve W. McDonald